IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS and MARGARET LINSDAY, his wife, Plaintiffs | : : : | |
| vs. | : | MISC. NO. 1:MC-10-441 |
| C. R. BARD, INC., a NJ Corp and BARD PERIPHERAL VASCULAR, INC., et al., Defendants | : : : | |
| THOMAS and MARGARET LINSDAY, his wife, Plaintiffs | : : : | |
| vs. | : | MISC. NO. 1:MC-10-442 |
| C. R. BARD, INC., a NJ Corp and BARD PERIPHERAL VASCULAR, INC., et al., Defendants | : : : | |

*M E M O R A N D U M*

*I.     Introduction*

Presently before the court are two motions to quash and for protective orders filed by Bill Nicholson, M.D. and Christopher Touhy, non-parties to the underlying civil action. These motions relate to litigation ongoing in the United States District Court for the Southern District of New York ( "*Lindsay*") and the Middle District of North Carolina ("*Clark*") against C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard"). After review of the motions, we will grant Mr. Tuohy's motion, but deny Dr. Nicholson's motion.

*II.    Background*

Bard develops, manufactures, and markets medical devices to treat several vascular diseases. Two such products, the Bard's Recovery IVC filter and a second generation version named the G2 IVC filter, were approved by the Food and Drug Administration for use in the prevention of pulmonary emboli by filtering the blood to prevent material, such as blood clots, from blocking the main artery of the lung or one of its branches. The devices contain "arms" and "legs" which serve to anchor the filters in place.

In 2009, plaintiffs filed complaints against Bard in *Lindsay* and *Clark*, alleging that Bard's Recovery IVC and the G2 IVC filters, which were placed in plaintiffs to prevent pulmonary emboli, fractured and migrated to their hearts. Allegedly in support of their claims, plaintiffs rely on an article published by Dr. Nicholson entitled *Prevalence of Fracture and Fragment Embolization of Bard Retrievable Vena Cava Filters and Clinical Implications Including Cardiac Perforation and Tamponade*, 170 Arch. Inter. Med. 1827 (2010)("Nicholson Article"). Mr. Touhy conducted the statistical analysis needed for the study. In this article, Dr. Nicholson concluded that Bard's Recovery IVC fractured in 25% of patients who participated in his study, and Bard's G2 IVC filters fractured in 12% of patients. In addition, he hypothesized that the G2 fracture rate may increase if the

filters were to remain in patients for a longer period of time than that found in the study. Dr. Nicholson's article is the subject of the present motions to quash.[1]

*III.    Discussion*

The Federal Rules of Civil Procedure allow the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). Relevant evidence need not be admissible so long at it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Rule 45 outlines the necessary procedures through which a party may seek discovery from a nonparty.

Federal Rule of Civil Procedure 45 governs when a court may quash or modify a subpoena. Specifically, Rule 45(c)(3)(A) requires a court to quash a subpoena if it is unduly burdensome. Furthermore, Rule 45(c)(3)(B) permits the court to quash or modify a subpoena if it requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was requested by a party." Moreover, Federal Rule of Civil Procedure 26(c) permits a court, for good cause, to issue a protective order to prevent a person from annoyance or undue burden. In examining motions to quash or for a protective order, "courts weigh the need of the party seeking discovery against any undue hardships created by permitting it." *In re Methyl Tertiary*, 269 F.R.D. 360, 363-64 (S.D.N.Y. 2010). To that end, we consider issues such as relevance, the requesting party's need, the breadth of

---

[1] Dr. Nicholson is a board certified cardiologist who practices in York County, Pennsylvania. Mr. Tuohy is a first-year medical student at Penn State's Hershey Medical Center.

3

the request, and the burden imposed when analyzing whether a subpoena places an undue burden on a nonparty.  *Grider v. Keystone Health Plan Central, Inc.*, No. 05-MC-40, 2005 WL 2030456 (M.D. Pa. July 28, 2005)(Kane, J.).  Both Dr. Nicholson and Mr. Tuohy challenge the subpoenas for depositions, arguing that any depositions would be unduly burdensome, and any testimony would be redundant, irrelevant, and require disclosure of unretained expert opinion.

It is undisputed that Nicholson's Article is relevant to the underlying litigation, and may be relied upon by plaintiffs in support of their positions.  As we have indicated, the litigation at issue concerns the alleged failure of Bard's various filter devices, which are the very subject of Dr. Nicholson's study and subsequent article. Recognizing the importance of the information garnered through this research, plaintiffs counsel questioned witnesses about the study and whether they were aware of the Nicholson Article.  (*See* doc. 6, Exs. G & H of docket number 10-mc-441).  Likewise, defendants sought and received nearly 14,000 pages of documents from Dr. Nicholson and York Hospital, whose patients participated in the study, that included all of the study's raw data, medical records of all patients who participated, fluoroscopy films relied upon to formulate results of the study, and hundreds of email exchanges.  (doc. 2 at pg. 2.)  Dr. Nicholson claims that this production represents all the information in his and the hospitals possession related to his research.

Based on the limited record before us, we cannot find any reason to prevent Dr. Nicholson from giving deposition testimony.  He primarily relies on two arguments: (1) the deposition's purpose is to annoy and harass; and (2) Bard is seeking his expert

4

opinion. However, Dr. Nicholson offers no evidence indicating that the sole reason behind Bard's request is to harass and annoy. Bard contends that its seeks factual information regarding the study and will limit its inquiry to those facts. It argues that it does not seek Dr. Nicholson's expert opinion. If Bard's questioning should deviate from factual inquiries underlying the study, and instead venture into Dr. Nicholson's unretained expert opinion on the underlying litigation, his counsel may object or take other appropriate steps. Therefore, we conclude that Dr. Nicholson fails to offer any compelling reason to quash the subpoenas. Thus, we will deny his motions.

However, we find that requiring Mr. Tuohy to appear for a deposition would be unduly burdensome. As both parties admit, Mr. Tuohy is a first-year medical student who was responsible for performing the statistical analysis for the Nicholson Article. In fact, his only involvement in the study was limited to performing the necessary calculations. Furthermore, any testimony of Mr. Tuohy, at best, would be redundant given the fact that defendants will depose Dr. Nicholson. Therefore, we will grant Mr. Tuohy's motion to quash and enter a protective order excusing him from testifying.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: January 24, 2011

5

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS and MARGARET LINSDAY, his wife, | : | |
| Plaintiffs | : | |
| vs. | : | MISC. NO. 1:MC-10-441 |
| C. R. BARD, INC., a NJ Corp and BARD PERIPHERAL VASCULAR, INC., et al., | : | |
| Defendants | : | |
| | | |
| THOMAS and MARGARET LINSDAY, his wife, | : | |
| Plaintiffs | : | |
| vs. | : | MISC. NO. 1:MC-10-442 |
| C. R. BARD, INC., a NJ Corp and BARD PERIPHERAL VASCULAR, INC., et al., | : | |
| Defendants | : | |

## *O R D E R*

AND NOW, this 24th day of January, 2011, upon consideration of Bill Nicholson, M.D. and Christopher Touhy's motions to quash, and pursuant to the accompanying Memorandum, it is ordered that:

    1. Mr. Touhy's motion to quash is granted.

    2. Mr. Tuohy is excused from responding to the subpoena requesting his testimony at a deposition.

    3. Dr. Nicholson's motion to quash is denied.

                                  /s/ William W. Caldwell
                                  William W. Caldwell
                                  United States District Judge